## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Civil Action No.: _____<br><br>(This Document Relates To An Action Pending In The U.S. District Court For The Northern District Of Florida – Civil Action No. 3:19-md-2885)<br><br>MOTION DATE: October 4, 2021<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA TO PRODUCE DOCUMENTS SERVED ON NON-PARTY SEASON 4, LLC OR, ALTERNATIVELY, MOTION FOR A PROTECTIVE ORDER

Dated: September 3, 2021

Respectfully submitted,

**FOX ROTHSCHILD LLP**

*/s/* Jeffrey M. Pollock
Jeffrey M. Pollock
Dominique J. Carroll
997 Lenox Drive
Lawrenceville, New Jersey 08648
Tel.: (609) 896-3600
Fax: (609) 896-1469
jmpollock@foxrothschild.com
djcarroll@foxrothschild.com

*Counsel for Non-Party Season 4, LLC*

## **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.   RELEVANT FACTUAL BACKGROUND ....................................................3

    A.    The MDL and underlying litigations ....................................................3

    B.    Season 4, LLC .....................................................................................5

    C.    Defendants' Subpoena .........................................................................7

III.  LEGAL STANDARD ...................................................................................7

IV.   ARGUMENT ...............................................................................................10

    A.    The Subpoena must be quashed because it seeks privileged and
        protected material.  Additionally, the Subpoena may be quashed
        because it seeks confidential research and commercial information..10

    B.    Protected Claimants using the Site had an expectation of privacy,
        unlike the respondents to Defendants' subpoena to Top Class
        Actions, LLC......................................................................................16

    C.    The Subpoena is overly broad and unduly burdensome. ...................17

    D.    Consistent with the edict of Hickman v. Taylor, the Subpoena should
        be quashed because the information sought is likely available from
        parties to the litigation......................................................................18

    E.    Alternatively, the Court should limit the Subpoena or issue a
        protective order. ................................................................................20

V.    CONCLUSION ...........................................................................................22

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
  3:19-md-2885 (N.D. Fla.) ................................................................. 5, 16

*3M Company, et al. v. Top Class Actions, LLC*,
  3:20-mc-74-MCR-GRJ (N.D. Fla.) ................................................. 5, 16

*In re Cooper Tire & Rubber Co.*,
  568 F.3d 1180 (10th Cir. 2009) ............................................................ 9

*Crocs, Inc. v. Effervescent, Inc.*,
  2016 WL 9584443 (D. Colo. Dec. 12, 2016) ...................................... 19

*Echostar Commc'ns Corp. v. News Corp. Ltd.*,
  180 F.R.D. 391 (D. Colo. 1998) .......................................................... 19

*Fraternal Order of Police, Lodge No. 5 v. City of Phila.*,
  812 F.2d 105 (3d Cir. 1987) ................................................................ 15

*Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*,
  333 F.3d 38 (1st Cir. 2003) ................................................................... 9

*Hickman v. Taylor*,
  329 U.S. 495 (1947) ...................................................................... 12, 18

*Katz v. Batavia Marine & Sporting Supplies, Inc.*,
  984 F.2d 422 (Fed. Cir. 1993) ............................................................ 10

*In re Kozlov*,
  79 N.J. 232 (1979) .............................................................................. 14

*Laxalt v. McClatchy*,
  116 F.R.D. 455 (D. Nev. 1986) ............................................................. 8

*Leonen v. Johns-Manville*,
  135 F.R.D. 94 (D.N.J. 1990) .......................................................... 12, 13

*Millennium TGA, Inc. v. Comcast Cable Comm'ns LLC*,
  286 F.R.D. 8 (D.D.C. 2012) ................................................................ 20

ii

*Moon v. SCP Pool Corp.*,
    232 F.R.D. 633 (C.D. Cal. 2005) ........................................................................ 19

*Murphy v. Deloitte & Touche Group Ins. Plan*,
    619 F. 3d 1151 (10th Cir. 2010) .......................................................................... 19

*Mycogen Plant Sci., Inc. v. Monsanto Co.*,
    164 F.R.D. 623 (E.D. Pa. 1996) .............................................................................. 8

*Nat. Union Fire. Ins. Co. of Pittsburgh, P.A. v. Becton, Dickinson & Co.*,
    2018 WL 627378 (D.N.J. Jan. 30, 2018) ........................................................... 15

*Robbins v. Camden City Bd. of Educ.*,
    105 F.R.D. 49 (D.N.J. 1985) .................................................................................. 7

*Scheetz v. The Morning Call, Inc.*,
    946 F.2d 202 (3d Cir. 1991) ................................................................................ 16

*Schmulovich v. 1161 Rt. 9 LLC*,
    2007 WL 2362598 (D.N.J. Aug. 15, 2007) ................................................... 15, 17

*Sporck v. Peil*,
    759 F.2d 312 (3d Cir.), *cert. denied*, 474 U.S. 903 (1985) ................................ 13

*Stamy v. Packer*,
    138 F.R.D. 412 (D.N.J. 1990) ................................................................................ 8

*United Coal Companies v. Powell Constr. Co.*,
    839 F.2d 958 (3d Cir. 1988) ................................................................................ 13

*WM High Yield v. O'Hanlon*,
    460 F. Supp. 2d 891 (S.D. Ind. 2006) ................................................................ 19

**Statutes**

28 U.S.C. § 1332(a) ................................................................................................. 13

28 U.S.C. § 1407 .................................................................................................... 3, 4

**Other Authorities**

Fed. R. Civ. P. 26 ................................................................................................. 9, 20

Fed. R. Civ. P. 26(b)(1) ..................................................................................... 9, 15, 21

Fed. R. Civ. P. 26(b)(2)(C) ............................................................... 9, 21

Fed. R. Civ. P. 26(b)(2)(C)(i) ................................................................... 21

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii) ............................................................ 21

Fed. R. Civ. P. 26(b)(2)(C)(ii) .................................................................. 21

Fed. R. Civ. P. 26(b)(3) ............................................................................ 13

Fed. R. Civ. P. 26(c) and 45(d)(3) .............................................................. 3

Fed. R. Civ. P. 45 ....................................................................... 9, 15, 16, 18

Fed. R. Civ. P. 45(c) ................................................................................. 10

Fed. R. Civ. P. 45(c)(3)(A)(iv) ................................................................. 18

Fed. R. Civ. P. 45(d)(1) .............................................................................. 9

Fed. R. Civ. P. 45(d)(3) ...................................................................... 1, 8, 10

Fed. R. Civ. P. 45(d)(3)(A) ............................................................. 8, 10, 20

Fed. R. Civ. P. 45(d)(3) (A)(i), (iii), (iv) ................................................. 17

Fed. R. Civ. P. 45(d)(3)(A)(iii) ................................................................. 16

Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv) ........................................................... 9

Fed. R. Civ. P. 45(d)(3)(B) ....................................................................... 10

Fed. R. Civ. P. 45(d)(3)(B)(i) ............................................................... 9, 15

Fed. R. Civ. P. 45(f) .................................................................................... 1

Fed. R. Evid. 401 ...................................................................................... 15

Fed. R. Evid. 501 ...................................................................................... 13

## I.    INTRODUCTION

Non-party Season 4, LLC, moves for an order, under Federal Rule of Civil Procedure 45(d)(3), to quash the subpoena to produce documents issued by defendants 3M Company, 3M Occupational Safety LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and Aearo Technologies LLC in a multidistrict litigation pending in the Northern District of Florida. *See* Defendants' Subpoena to Season 4, attached as <u>Exhibit 1</u> to the Declaration of Dominique J. Carroll, Esq.[1]  The Subpoena should be quashed to protect Season 4 and plaintiffs, such as Edward Cerracchio and Luis Betancourth, who submitted information on classaction.org in the anticipation of retaining counsel, with the expectation that the medical and/or personal information submitted on the website would be kept confidential.  *See id.* at <u>Exhibit 6</u> and <u>Exhibit 7</u> (Messrs. Cerracchio and Betancourth's Certifications).

Season 4 operates the web-based service classaction.org to connect potential clients (plaintiffs) with law firms knowledgeable about plaintiff's potential claims (here, defective 3M Combat earplug cases).   Acknowledging the reasonable

---

[1] This Court has jurisdiction over this motion under Fed. R. Civ. P. 45(f). The subpoena commands the investigation, assembly, and production of documents from Season 4's corporate headquarters in Warren, New Jersey. Also, Season 4 does not consent to transferring this motion to the issuing court in the Northern District of Florida.

expectation of privacy held by Messrs. Cerracchio, Betancourth, and similarly situated claimants ("Protected Claimants") in their submissions, Season 4 informed Protected Claimants that it "takes this responsibility and your privacy seriously. . ." Season 4's Privacy Notice, Carroll Decl., Exhibit 2.  Using Season 4's platform, Protected Claimants in New Jersey and elsewhere disclosed information (with the expectation those disclosures would be confidential) and retained their counsel.  In short, the Protected Claimants had an expectation of confidentiality concerning use of Season 4's platform to retain counsel.

The Subpoena improperly (i) seeks disclosure of privileged or otherwise protected matters, including confidential commercial information; (ii) seeks attorney communications; and (iii) subjects Season 4 to undue burden and expense.  Indeed, the Subpoena seeks all documents Season 4 possesses regarding any plaintiff in the MDL.  The Subpoena also seeks all documents Season 4 possesses relating to analysis performed by Season 4 or any lawyer or law firm concerning a plaintiff in the MDL.[2]

New Jersey plaintiffs—and others—expected their communications with Season 4 and with counsel to be protected.  Further, Defendants do not need to

---

[2] Defendants' demands include all documents sent to Season 4 by any lawyer regarding MDL plaintiffs or their claims.

2

impinge upon the Protected Claimants' expectation of privacy as defendants have available to them the legitimate and traditional tools of discovery—borrowing the wits of their adversary is not one of those tools.  Defendants could obtain the information in a more convenient and less intrusive manner from the plaintiffs in the MDL, rather than creating an undue burden on Season 4 or chilling the speech of Protected Claimants.  Thus, Season 4 moves to quash the Subpoena.  Alternatively, Season 4 requests that the Court enter a protective order specifying conditions for production if Defendants show a substantial need for the documents that cannot be met without undue hardship to Season 4 and ensuring that Season 4 will be reasonably compensated for its efforts under Fed. R. Civ. P. 26(c) and 45(d)(3).

## II.    RELEVANT FACTUAL BACKGROUND

### A.    The MDL and underlying litigations

As of April 3, 2019, this litigation consisted of eight actions pending in the following districts: (i) Central District of California (one action); (ii) District of Minnesota (four actions); (iii) Western District of Oklahoma (two actions); and (iv) Western District of Texas (one action).  *See* ECF No. 1, p. 1[3]; *see also id.* at Schedule A.  A plaintiff in one District of Minnesota action moved, under 28 U.S.C. § 1407, to centralize this litigation in the District of Minnesota or, alternatively, the Western

---

[3] Docket entry references are from the MDL Docket (No. 3:19-md-2885, N.D. Fla.) unless otherwise noted.

District of Missouri. *Id.* "Common defendant 3M Company and plaintiffs in more than 45 actions and potential tag-along provisions support[ed] centralization in the District of Minnesota".[4] *Id.*

The United States Judicial Panel on Multidistrict Litigation was "notified of 635 related federal actions filed in 33 districts." *Id.* With the benefit of the papers filed and a hearing, the Panel found "[a]ll actions involve common factual questions arising out of allegations that defendants' Combat Arms earplugs were defective, causing plaintiffs to develop hearing loss and/or tinnitus." ECF No. 1, p. 2.[5] The Panel also found that "[i]ssues concerning the design, testing, sale, and marketing of the Combat Arms earplugs are common to all actions" and the Northern District of Florida was selected as the transferee district for this litigation. *Id.* The MDL was assigned to the Honorable M. Casey Rogers, U.S.D.J. for coordinated or consolidated pretrial proceedings. *Id.*

In the Northern District of Florida, Defendants filed a discovery subpoena on

---

[4] While all responding parties supported centralization, they did not all agree on the appropriate transferee district. Indeed, respondents suggested a total of eighteen different districts. *See* ECF No. 1, p. 1.

[5] As explained by the Honorable Gary R. Jones, U.S.M.J., "[t]his multidistrict litigation is a products liability action concerned with whether Defendants were negligent in their design, testing, and labeling of the nonlinear dual-ended Combat Arms Earplug Version 2 (the 'CAEvW')". ECF No. 879 (citing Master Long Form Complaint, ECF No. 704).

non-party Top Class Actions, LLC ("TCA") and, thereafter, filed a motion to compel compliance with that subpoena.  *See 3M Company, et al. v. Top Class Actions, LLC*, 3:20-mc-74-MCR-GRJ (N.D. Fla.), ECF No. 1.  Judge Rogers granted Defendants' motion to compel discovery from TCA.  *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 3:19-md-2885, ECF No. 52.

Unlike TCA, here, the Protected Claimants had an expectation of privacy, as set forth in the Betancourth Cert. and the Cerracchio Cert.  Protected Claimants like Messrs. Betancourth and Cerracchio retained counsel for their claims arising from use of Defendants' defective Combat Arms earplugs.  Prior to retaining counsel the Protected Claimants "completed a form regarding a potential 3M military ear plug claim on classaction.org [operated by Season 4] with the expectation and belief that [their] medical and/or personal information would be kept confidential and that it would not be made public without [their] express permission."  *See* Betancourth Cert. and Cerracchio Cert., at ¶ 2.  Further, Season 4 has a privacy interest in its confidential information and trade secrets including its business models and corporate structure, which Defendants seek to obtain through the Subpoena.

## B.   Season 4, LLC

Season 4 is a Warren, New Jersey based company, and New Jersey registered entity, that operates the website classaction.org.  Through the Site, Season 4 "provides users with the ability to register a personal complaint or injustice and

forward it to the lawyers, law firms, legal financial service providers, or other legal service providers sponsoring submission forms (the 'Service')."  *See* Season 4's Terms of Use Effective Aug. 16, 2019, Carroll Decl. <u>Exhibit 3</u>, p. 2.  Users of the Site "expressly accept and agree to be bound by the terms and conditions of [Season 4's Terms of Use], the Privacy Notice and the Disclaimer." *Id.* at p. 1; *see also* Season 4's Privacy Notice and Disclaimer, Carroll Decl. at <u>Exhibit 2</u> and <u>Exhibit 4</u>, respectively.[6]

Additionally, users of the Site agree that the Terms of Use "shall be governed by and construed in accordance with the laws of the state of New Jersey, without regard to conflicts of laws provisions" and "that the United States District Court for the District of New Jersey and/or the Superior Court for the County of Somerset shall have exclusive jurisdiction over any dispute between [a user] and S4 relating in any way to the S4 service or website or [its Terms of Use]."  Carroll Decl., <u>Exhibit 3</u>, p. 18-19.  Users also "expressly and irrevocably consent to personal jurisdiction and venue in" the United States District Court for the District of New Jersey and/or the Superior Court for the County of Somerset.  *Id.*

Because Season 4 understands the confidential and sensitive nature of the

---

[6] As of the date of the Subpoena, Season 4's Aug. 16, 2019 version of its Terms of Use and Disclaimer and its December 23, 2019 version of its Privacy Policy were effective.

information provided by Protected Claimants using the Site, Season 4 acknowledges users of the Site for "trusting [Season 4] with your personal information" and advises them that Season 4 "take[s] this responsibility [to safeguard user information and users'] privacy, very seriously." Carroll Decl., Exhibit 2, p. 1.  Accordingly, Season 4 "built [its] website using industry-standard security measure[s] and authentication tools to protect the security of [users' personal data]." *Id.* at 21.  Moreover, Season 4 "and the third parties who provide services for [Season 4], also maintain technical and physical safeguards to protect [users' personal data]." *Id.* at 22.

### C.    Defendants' Subpoena

During the first quarter of 2020, Defendants issued the Subpoena.  By letter dated March 31, 2020, Season 4 produced documents responsive to Defendants' documents demands numbers 3, 4, and 5.  *See* Season 4's Letter to Defendants' Counsel, Carroll Decl. at Exhibit 5.  Season 4 objected to the remainder of the Subpoena.  *Id.*  More than a year elapsed, and Season 4 has heard nothing regarding the Subpoena.

## III.   LEGAL STANDARD

Despite the liberal nature of discovery in civil actions, the scope of such discovery is not unlimited.  *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 55 (D.N.J. 1985).  Discovery "should be tailored to the issues involved in the particular case." *Id.* (citation omitted).  Even before considering the issue of privilege or other

protections, the party seeking discovery from a non-party has the burden of demonstrating that the information being sought is relevant to its claims. *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 164 F.R.D. 623, 625-6 (E.D. Pa. 1996).

Season 4 is a non-party and is, therefore, afforded greater protection from discovery than a normal party. *See Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990) ("the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery"); *see also Laxalt v. McClatchy*, 116 F.R.D. 455, 457-8 (D. Nev. 1986) ("The rule is thus well established that nonparties to litigation enjoy greater protection from discovery than normal parties."). It is Defendants' burden to demonstrate that the discovery sought is relevant to its claims or defenses. If found to be relevant, the discovery is then examined regarding the information sought and the burdens imposed.

Although, in some instances, the examination allows for the use of discretion by a reviewing court, in other instances a reviewing court is required to impose limits on discovery. Fed. R. Civ. P. 45(d)(3). The subpoenaed non-party generally has the burden of showing that disclosure of the information is protected under Fed. R. Civ. P. 45(d)(3)(A) or (B), after which the proponent must show a substantial need that cannot be met without undue hardship. *Mycogen Plant Sci.*, 164 F.R.D. at 626.

A Court is required to quash a subpoena that requires the disclosure of privileged or other protected matter (if no exception or waiver applies) or subjects a

person to undue burden.  Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).  Alternatively, a Court

may quash or modify a subpoena that requires the disclosure of a trade secret or

other confidential research, development, or commercial information. Fed. R. Civ.

P. 45(d)(3)(B)(i).  Fed. R. Civ. P. 45 also contains the more basic requirement that a

subpoenaing party must take reasonable steps to avoid imposing undue burden or

expense. Fed. R. Civ. P. 45(d)(1).

The foregoing approach to quashing a subpoena is generally consistent with

Fed. R. Civ. P. 26, by which a Court must limit the extent of discovery if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or
> can be obtained from some other source that is more convenient, less
> burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the
> information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule
> 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

Discovery is limited to "claims or defenses."  Fed. R. Civ. P. 26(b)(1); *see*

*also In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1189 (10th Cir. 2009) (noting

that all discovery is subject to the limitations imposed by Rule 26(b)(1)).  Finally,

federal courts not only reign in non-party discovery, but also view the discovery of

protected materials with an even more critical eye.  *Heidelberg Americas, Inc. v.*

*Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41-2 (1st Cir. 2003) (subpoena quashed

because of imbalance between need for information and significant burden on non-

party).  As a result, courts consider non-party status in weighing burdens and the burden is on the proponent to establish a need for the information sought, especially with respect to confidential non-party information.  *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424-5 (Fed. Cir. 1993).

## IV.   ARGUMENT

As a non-party in receipt of a subpoena, Season 4 may move to quash the Subpoena.  *See* Fed. R. Civ. P. 45(d)(3).  A District Court "*must quash* or modify a subpoena that: (i) fails to allow a reasonable time to comply . . . (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c) . . . (iii) requires disclosure of privileged or other protected matter . . . or (iv) subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A) (emphasis added).  Further, the Court may quash or modify a subpoena if it requires disclosure of trade secrets or other confidential information.  Fed. R. Civ. P. 45(d)(3)(B).

**A.   The Subpoena must be quashed because it seeks privileged and protected material.  Additionally, the Subpoena may be quashed because it seeks confidential research and commercial information.**

In addition to seeking irrelevant and immaterial documents and information, the Subpoena invades the right of confidentiality and privacy by seeking documents and information protected from disclosure such as confidential and commercial information.

**1. The Subpoena should be quashed because it threatens disclosure of privileged and protected attorney communications and invades the reasonable expectation of privacy held by users of Season 4's Site.**

As explained in the Betancourth Cert. and Cerracchio Cert., Protected Claimants completed a form on the Site regarding their potential Combat Arms earplug claims, "with the expectation and belief that [their] medical and/or personal information would be kept confidential and that it would not be made public without [the users'] express permission." *See* Betancourth Cert. and Cerracchio Cert., at ¶ 2. Indeed, users "completed a form regarding a potential 3M military ear plug claim on classaction.org in the anticipation of retaining counsel and expected that counsel would honor confidentiality." *Id.* at ¶ 3. While potential claimants "understood that by filling out the form [they] had not engaged in a direct legal relationship, [their] expectation was that this information was confidential nonetheless and would be used solely and only for the purposes of assisting [potential claimants] in obtaining and conferring with legal counsel." *Id.* at ¶ 4. The Subpoena should be quashed as it invades the expectation of privacy maintained by users of the Site. Conversely, enforcing the Subpoena would have a chilling effect on the speech of potential claimants as a tool that they thought was private would be used instead as a tool by Defendants to attack the plaintiffs.

The Subpoena should also be quashed as it is "an attempt to secure the production of written statements and mental impressions contained in the files and

the mind[s] of the [potential claimants'] attorney[s] … without any showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of [Defendants'] case or cause [them] any hardship or injustice." *Hickman v. Taylor*, 329 U.S. 495, 509 (1947). Here, privileged and protected material – such as attorney communications – will be captured by the broadly defined nature of documents sought.[7] For example, the Subpoena demands production of the following:

> RFP No. 2: All documents relating to any analysis done by you or sent to you by any Person, including any Plaintiffs' Law Firm or any other lawyer, regarding any Claimant(s) or any of their Claims.

> RFP No. 6: All communications between you and any Plaintiffs' Law Firm or other lawyers related to the Claimants and any of their Claims.

In fact, the Subpoena would also capture analyses by Season 4 relating to its business and evaluation of plaintiffs' claims provided by a lawyer or law firm in connection with MDL plaintiffs.

Notably, the work product doctrine "is distinct from, and broader than, the attorney-client privilege." *Leonen v. Johns-Manville*, 135 F.R.D. 94, 96 (D.N.J. 1990) (citing *Hickman*, 329 U.S. at 508). Specifically, "[t]he work-product doctrine,

---

[7] Additionally, the Subpoena defines Season 4 to capture affiliates – which are separate entities – that are protected because they themselves have not been served with a subpoena.

codified in Fed. R. Civ. P. 26(b)(3), governs all cases in federal court" and "provides for a qualified privilege that protects documents prepared in anticipation of litigation by a party or for the party's attorney or other representative." *Id.* (citation omitted). Moreover, "[o]pinion work-product, such as an attorney's legal strategy or evaluation of a case's strengths and weaknesses, is almost absolutely privileged." *Id.* (citing *Sporck v. Peil*, 759 F.2d 312 (3d Cir.), *cert. denied*, 474 U.S. 903 (1985)). "Disclosure of such material is far outweighed by the interest in protecting an attorney's thought processes." *Id.*

Further, as jurisdiction is based upon diversity in this litigation, questions regarding privileges are assessed under state law. *See Leonen*, 135 F.R.D. 98 ("Rule 501 of the Federal Rules of Evidence directs this Court to look to state law in deciding questions of privilege when jurisdiction is based on diversity.") (citing *United Coal Companies v. Powell Constr. Co.*, 839 F.2d 958, 965 (3d Cir. 1988)); *see also* ECF No. 704, ¶ 22 (Master Long Form Complaint, stating "This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)."). Accordingly, "the attorney client privilege is governed by New Jersey law." *Leonen*, 135 F.R.D. at 98.

Under New Jersey law, a court may pierce the attorney-client privilege only if (1) there is a legitimate need to reach the evidence sought to be shielded from disclosure, (2) there is a showing of relevance and materiality of that evidence to the issue before the court, and (3) the party opposing assertion of the privilege has shown

by a fair preponderance of the evidence, including all reasonable inferences, that the information cannot be secured from any less intrusive means. *In re Kozlov*, 79 N.J. 232, 243–44 (1979). In this case, Defendants cannot satisfy any of the *Kozlov* factors. First, Defendants lack a legitimate need for the privileged information they seek. Second, the requested information is irrelevant and immaterial to the products liability allegations at issue in this litigation. Lastly, Defendants could seek the information through less intrusive means such as party depositions and discovery demands (assuming they clear relevancy and privilege hurdles). As Defendants cannot overcome the substantial protections afforded to the users under New Jersey law, the Court should quash the Subpoena.

**2. The Subpoena should be quashed because it threatens disclosure of confidential business information and trade secrets such as Season 4's business models and the terms and conditions of Season 4's business arrangements.**

Defendants' requests for production ("RFP") include the following:

RFP No. 3: All documents relating to the referral of any Claimant(s) to a lawyer, including the date of and amount charged for the referral(s).

RFP No. 5: All documents relating to your agreements with any Plaintiffs' Law Firm or other lawyers regarding the CAEMDL or Related Actions.

RFP No. 7: All documents regarding any financial interest that any other Person, including any Plaintiffs' Law Firm, has in you.

RFP No. 8: All documents relating to your ownership by any other Person, including any Plaintiffs' Law Firm.

Notably, the above information is irrelevant to the core issue in this litigation
as recognized by Judge Jones. As Judge Jones succinctly framed it, "[t]his
multidistrict litigation is *a products liability action concerned with whether
Defendants were negligent in their design, testing, and labeling of the nonlinear
dual-ended Combat Arms Earplug Version 2 (the 'CAEvW')*".   ECF No. 879 (citing
Master Long Form Complaint, ECF No. 704) (emphasis added).   Season 4's
ownership structure has no tendency to make a fact of consequence in this action
more or less probable than it would be without the evidence.  *See* Fed. R. Evid. 401;
*see also Schmulovich v. 1161 Rt. 9 LLC*, 2007 WL 2362598, at *2 (D.N.J. Aug. 15,
2007) ("A Rule 45 subpoena served in conjunction with discovery must fall within
the scope of proper discovery under Fed.R.Civ.P. 26(b)(1)").

Defendants' requests threaten potential claimants' privacy interests and seek
disclosure of potential claimants' private information and Season 4's confidential
information and trade secrets.  This Court "*may* quash or modify a subpoena where
it requires 'disclosing a trade secret or other confidential research, development, or
commercial information.'" *Nat. Union Fire. Ins. Co. of Pittsburgh, P.A. v. Becton,
Dickinson & Co.*, 2018 WL 627378, at *5 (D.N.J. Jan. 30, 2018) (quoting Fed. R.
Civ. P. 45(d)(3)(B)(i); emphasis in original).  Understandably, the Third Circuit has
"previously suggested that there are privacy interests in certain financial
information".  *See e.g.*, *Fraternal Order of Police, Lodge No. 5 v. City of Phila.*, 812

F.2d 105, 115 (3d Cir. 1987); *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 207 (3d Cir. 1991) (noting that regarding "financial records... there is a reasonable expectation that privacy will be preserved"). Defendants' demands seek irrelevant information and threaten the disclosure of commercial sensitive information regarding Season 4's financial interests and corporate structure. These types of information are protected under Fed. R. Civ. P. 45 and this Court should quash the Subpoena. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii).

**B.     Protected Claimants using the Site had an expectation of privacy, unlike the respondents to Defendants' subpoena to Top Class Actions, LLC.**

Under Fed. R. Civ. P. 45, Defendants filed a motion to compel compliance with a discovery subpoena served on non-party TCA. *See 3M Company, et al. v. Top Class Actions, LLC*, 3:20-mc-74-MCR-GRJ (N.D. Fla.), ECF No. 1; *see also* Order Granting Defendants' Motion, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 3:19-md-2885, ECF No. 52. That motion was fully briefed by the parties and, by Order filed March 12, 2021, Judge Rodgers granted Defendants' motion to compel discovery from TCA and overruled TCA's objections based upon attorney-client privilege and work product protection.

Here, Protected Claimants using the Site had an expectation of privacy as set forth in the certifications from Messrs. Betancourth and Cerracchio. Moreover, Season 4 has a privacy interest in its confidential information and trade secrets

including its business models and corporate structure as discussed *supra*.  Further, New Jersey has strong state law protections for the types of attorney-client communications sought by Defendants in their expansive requests.

### C.    The Subpoena is overly broad and unduly burdensome.

Compliance with Defendants' Subpoena would subject Season 4 to an undue burden.  *See* Fed. R. Civ. P. 45(d)(3) (A)(i), (iii), (iv).  An undue burden exists when, as here, the subpoena is "unreasonable or oppressive." *Schmulovich*, 2007 WL 2362598, at *4.   Although there is no "strict definition of unreasonable or oppressive," courts have used several factors to assess a subpoena's reasonableness: (1) the party's need for the production; (2) the nature and importance of the litigation; (3) the relevance of the material; (4) the breadth of the request for production; (5) the time period covered by the request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed party.  *Id.* (citing 9 James WM. Moore, *et al.*, Moore's Federal Practice ¶ 45.32 (3d ed. 2006)).

At best, Defendants' demands seek information that is tangential to the issues in the underlying products liability lawsuit regarding the Combat earplugs. Balancing the relevant factors weighs in favor of Season 4.  Moreover, Defendants seek information that is confidential business information, the disclosure of which would be harmful to Season 4, and privileged communications and work product

17

regarding, among other things, the evaluations and mental impressions of lawyers or law firm concerning the MDL plaintiffs.   The undue burden to Season 4 is exacerbated by the broad scope of Defendants' demands. *See*, *e.g.*, RFP No. 1 (requesting all documents relating to any claimant, including any information collected from any claimant, analysis of the scope or amount of any claims). Accordingly, Defendants' subpoena to Season 4 should be quashed.

### D. Consistent with the edict of *Hickman v. Taylor*, the Subpoena should be quashed because the information sought is likely available from parties to the litigation.

Through the Site, Season 4 provides Protected Claimants with a useful tool for securing counsel and working toward their day in court to vindicate their claims. The Site was not designed for, and users did not expect, that Defendants would be able to invade the mental impressions and opinions of counsel for use against potential claimants.   In short, Protected Claimants neither agreed to, nor expected, that the Site could become a tool to aid Defendants.

Even if the information sought in the Subpoena is relevant and necessary to this litigation (which Season 4 disputes), Defendants can secure that information directly from the parties without impinging upon plaintiffs' or Season 4's rights. The Subpoena imposes an undue burden on Season 4 and must be quashed or modified.   Under Fed. R. Civ. P. 45, a Court must "quash or modify [a] subpoena if it . . . subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv).   Especially

with respect to non-party subpoena recipients, discovery has "never been a license to engage in an unwieldy, burdensome and speculative fishing expedition." *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F. 3d 1151, 1163 (10th Cir. 2010).

To that end, courts routinely quash non-party subpoenas that seek information that should be obtained from parties to the litigation to avoid imposing an undue burden on the non-party. *See, e.g., Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) (quashing non-party subpoena because "the[] requests all pertain to defendant, who is a party, and thus, plaintiff can more easily and inexpensively obtain the documents from defendant, rather than from [the] nonparty"); *WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 896 (S.D. Ind. 2006) (granting motion to quash because the requesting party does not contend or attempt to show that it has been unable to obtain this information from those parties to the underlying litigation"); *Echostar Commc'ns Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998) (denying motion to compel and noting that "[m]aterials which relate to these [subpoenaed] transactions are readily available from [the defendant] as they are from non-parties"); *see also Crocs, Inc. v. Effervescent, Inc.*, 2016 WL 9584443, at *2 (D. Colo. Dec. 12, 2016) (recognizing that party serving subpoena "being required to obtain the information it seeks from nonparties first from [parties to the case], . . . is an argument that a subpoenaed non-party [] must make to avoid being whipsawed when information can be found in more than one place.").

It is evident that Defendants' subpoena seeks documents and information that pertain almost exclusively to the MDL plaintiffs or lawyers and/or law firms that evaluated plaintiffs' claims. Indeed, the requests mention Season 4 only indirectly and almost as an afterthought. The MDL plaintiffs and their counsel are the more relevant and direct sources for the information Defendants request. Further, given the MDL plaintiffs' status and involvement in the case (unlike Season 4), Defendants could obtain the information in a more convenient manner and without the need to burden a non-party like Season 4.

More fundamentally, Defendants failed to consider Season 4's remote relationship with the MDL plaintiffs or their counsel. Given that Defendants' requests almost exclusively pertain to the MDL plaintiffs and their counsel, the MDL plaintiffs' status as parties to the litigation, and Season 4's inability to access much of the information sought, Defendants could obtain the information in a more convenient and less expensive manner from the MDL plaintiffs in a manner that does not create an undue burden to non-party Season 4.

### E. Alternatively, the Court should limit the Subpoena or issue a protective order.

Although the Court should quash the Subpoena outright—at a minimum—the Court should limit any information sought under Fed. R. Civ. P. 45(d)(3)(A) and enter a protective order under Rule 26 to protect Season 4 "from annoyance, embarrassment, oppression, or undue burden or expense." *See, e.g.*, *Millennium*

*TGA, Inc. v. Comcast Cable Comm'cns LLC*, 286 F.R.D. 8, 13-14 (D.D.C. 2012)

(exercising discretion to modify an overly broad subpoena).

All three considerations under Rule 26(b)(2)(C) to limit the extent of discovery apply here:

> [T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Any discovery within the scope of the Florida matter would be unreasonably cumulative of discovery in that case that should be (or already has been) obtained directly from the MDL plaintiffs. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).  There is no justification for burdening Season 4 for duplicative discovery.  Defendants had ample opportunity to obtain the same information directly from the plaintiffs and to the extent Defendants claim their failures require the present Subpoena (which Defendants have not explained), Season 4 should be protected. *See* Fed. R. Civ. P. 26(b)(2)(C)(ii).  Further, without a protective order, there is no limit or protections from Defendants seeking discovery outside the scope permitted by Rule 26(b)(1) in the Florida case and are thus overreaching, as explained above.

Therefore, if the Court does not quash the Subpoena in its entirety, Season 4 requests an order limiting any information and discovery under the Subpoena by "forbidding the disclosure or discovery" and the "inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."  Fed. R. Civ. P. 26(c)(1)(A), (D).

## V.    CONCLUSION

Season 4 received a subpoena improperly seeking (i) protected information from potential claimants and (ii) protected information regarding Season 4's business and commercial information.  The subpoena seeks irrelevant information and information regarding claimants that Defendants could obtain through less intrusive means.  The Court should quash the subpoena served on Season 4 in its entirety.

Dated: September 3, 2021              Respectfully submitted,

                                      */s/ Jeffrey M. Pollock*
                                      Jeffrey M. Pollock
                                      Dominique J. Carroll
                                      FOX ROTHSCHILD LLP
                                      997 Lenox Drive
                                      Lawrenceville, NJ  08648
                                      Tel.: (609) 896-3600
                                      Fax: (609) 896-1469
                                      jmpollock@foxrothschild.com
                                      djcarroll@foxrothschild.com

                                      *Counsel for Non-Party Season 4, LLC*

22

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on September 3, 2021, a true and correct copy of the foregoing was posted electronically to the ECF website of the United States District Court for the District of New Jersey.  Additionally, a copy of the foregoing was served via electronic mail upon the following counsel for the Defendants:

Nicholas Wasdin, Esq.
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
nick.wasdin@kirkland.com

Tabitha De Paulo
Kirkland & Ellis LLP
609 Main Street
Houston, TX 77002
tabitha.depaulo@kirkland.com

*Counsel for Defendants*

*/s/ Dominique J. Carroll*
Dominique J. Carroll

## <u>LOCAL RULE CERTIFICATION</u>

Pursuant to Local Rule 37.1, I hereby certify that counsel for Season 4, LLC has conferred with counsel for defendants concerning the relief requested in this motion (via telephone conference on September 2, 2021) in a good faith effort to resolve by agreement the issues raised by this motion without the intervention of the Court and that the parties have been unable to reach agreement.

*/s/ Dominique J. Carroll*
Dominique J. Carroll
